# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE RODRIGUEZ, | 1:10-cv-00664-AWI-SMS (HC) |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| JAMES HARTLEY, | [Doc. 1] |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his 1985 conviction of first degree murder with a deadly weapons use enhancement. Petitioner is serving a sentence of twenty-seven years to life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, Petitioner challenges the Board of Parole Hearings' ("Board") 2008 decision finding him unsuitable for release on parole.

Petitioner filed a habeas corpus petition in the San Bernardino County Superior Court challenging the Board's decision as not supported by some evidence of his current risk of danger to society. The superior court denied the petition in a reasoned decision finding the Board's

///

1

decision was supported by "more than 'some evidence,'" under In re Lawrence, 44 Cal.4th 1181 (2008) and In re Shaputis, 44 Cal.4th 1241 (2008).

Petitioner filed a habeas corpus petitions in the state appellate court and California Supreme Court, which were both summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on April 15, 2010. Respondent filed an answer to the petition on August 3, 2010, and Petitioner filed a traverse on September 24, 2010.

STATEMENT OF FACTS[1]

On June 15, 1985, at approximately 3:45 a.m., the body of Daniel Peralta was discovered at a park in Linwood, California.  Mr. Peralta had been shot four times.

Petitioner and Barney Flores picked up the victim at his residence, and they were going to purchase drugs.  Later that evening, all three went to Bobby Padilla's house where they drank beer and smoked sherm-a cigarettes dipped in PCP.  An informant overheard Petitioner and Daniel Peralta arguing about a dope deal.  Mr. Peralta left Bobby Peralta's house on foot to an unknown location.  The informant saw the butt of a gun in Petitioner's waistband and heard Petitioner say "If that punk burns me, I'm going to shoot him."  The informant left with Barney Flores.  Petitioner subsequently asked Bobby Padilla to give him a ride home.  While driving down the road, Daniel Peralta waved them down.  They stopped to give Mr. Peralta a ride.  They stopped at the park in Linwood, and Petitioner and Daniel Peralta got into an argument.  After Bobby Padilla heard gunshots, Petitioner got back into the truck and told Bobby to "Go."  Petitioner told Bobby not to say anything.

DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

---

[1] This information is taken from the Board's 2008 decision which quoted the probation officer's report.

2

1  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769
2  (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v.
3  Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's
4  enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed
5  by its provisions.
6      Petitioner is in custody of the California Department of Corrections and Rehabilitation
7  pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state
8  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because
9  he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass
10 v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.
11 Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a
12 habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the
13 petition is not challenging [her] underlying state court conviction.'").
14     The instant petition is reviewed under the provisions of the Antiterrorism and Effective
15 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
16 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
17 adjudication of the claim "resulted in a decision that was contrary to, or involved an
18 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
19 of the United States" or "resulted in a decision that was based on an unreasonable determination
20 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
21 § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.
22     "[A] federal court may not issue the writ simply because the court concludes in its
23 independent judgment that the relevant state court decision applied clearly established federal
24 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
25 A federal habeas court making the "unreasonable application" inquiry should ask whether the
26 state court's application of clearly established federal law was "objectively unreasonable." Id. at
27 409.   Petitioner has the burden of establishing that the decision of the state court is contrary to
28 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

1  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
2  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
3  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
4  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous,

4

      atrocious or cruel manner.  The factors to be considered include:

          (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
          (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
          (C) The victim was abused, defiled or mutilated during or after the offense.
          (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
          (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

      (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

      (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

      (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

      (5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

      (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

      (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

      (2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

      (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

      (4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

      (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

      (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

  (7) Age.  The prisoner's present age reduces the probability of recidivism.

  (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

  (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

  The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor finds the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

  Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

  The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

  although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current

6

>dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. Last Reasoned State Court Decision

In the last reasoned decision of the San Bernardino Superior Court, the court found there was some evidence to support the Board's 2008 finding of unsuitability stating in pertinent part:

>A review of the record provided supports a finding that there was more than "some evidence" which led the Board to its finding of unsuitability of Petitioner for parole, for as the Supreme Court has described; such evidence need only be a "modicum" of evidence. Due to the extremely serious nature of offense which the jury found to be premeditated as well as the fact that the Petitioner had brought a gun with him the court considered Petitioner's prior criminal history which consisted of possession of a deadly weapon, possession of marijuana as well as grants of informal probation. Commissioner Lushbough reviewed the most recent psychiatric evaluation of Dr. Starrett in which he diagnosed Petitioner as having a personality disorder, antisocial traits, making special note, as reflected on page 50 commencing at lines 9 of the transcript of the Board hearing, that although Petitioner accepted responsibility for the crime and has had a good response to treatment, the recency of the last CDC 115 suggested to the doctor a lingering impulsivity.
>
>On the positive side Commissioner Prizmich reviewed Petitioner's lengthy history in both NA and AA and the Petitioner was able to discuss a number of the 12 steps with the commissioner. Commissioner Prizmich went on to discuss with Petitioner his use of PCP and methamphetamine prior to the commitment of the

life offense.

Commissioner Lushbough, commencing on page 36, line 19 and concluding on page 37, line 5, noted that Petitioner had received only 2 CDC 115's, however, commenting that the most recent one occurred relatively recently on June 5, 2003. Petitioner had 4 counseling c[h]ronos with the most recent being in 1993 and appears to be working hard on his education. Commissioner Lushbough discussed Petitioner's exemplary work as a lead man as well as being a certified laundry/linen manager.

The Board did consider the positive factors which favored parole and made its findings that these did not outweigh the factors surrounding the circumstances of the life crime taking into account the prisoner's pre and post incarceration history. While the decision did not reflect the weighing process of the Board, the Rosenkrantz Court at page 677 clearly states that the Board need not explain its decision or the precise manner in which the specific facts were relevant to parole suitability. This consideration in balancing lay within the discretion of the Board. Here the Board found that the identified facts were probative on the central issue of current dangerousness when considered in light of the full record before the Board.

This Court finds that the Board's observations were valid and consisted of "some evidence" in support of a finding of non-suitability with a 2 year denial and does comport with our Supreme Court's most recent directions in the cases of Lawrence and Shaputis.

(Ex. F to Pet.)

B.   2008 Board Hearing

The Board found the commitment offense was carried out in a cruel manner. The murder of Mr. Peralta was the result of an outstanding drug debt. Petitioner was under the influence of alcohol and drugs at the time of the offense. The victim voluntarily left the scene of the argument and later asked Petitioner and Bobby Padilla for a ride. When they stopped at the park in Linwood, Petitioner and Daniel began to argue again, and Petitioner shot Daniel multiple times. Petitioner admitted that he saw Daniel fall to the ground as a result of the shooting, then fled the scene and told Mr. Padilla not to say anything. It appears the shooting was dispassionate and committed in a calculated manner as Petitioner threatened to shoot Daniel if he "burned" him. There is no evidence the victim had a weapon or physically attacked Petitioner prior to the shooting. Thus, based on these circumstances there is some evidence that the offense was committed in a callous and calculated manner.

Petitioner has a prior criminal history which includes violent behavior at an early age.

Cal. Code Regs. tit. 15, § 2402(c)(2) ("the prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.")  As a juvenile Petitioner suffered a conviction for possession of a deadly weapon-billy club and nun chucks and possession of marijuana.  As an adult, he suffered a conviction for assault with a deadly weapon.

Petitioner suffered two serious rules violations in prison, the most recent on June 5, 2003, for failure to comply.  As discussed by the Board, the rules violation involved Petitioner walking away from an officer's interview because he felt he had more important things to do.  The Board and superior court were concerned that this violation continued to demonstrate Petitioner's attitude that he could do whatever he wished despite the consequences.  This finding is supported by Dr. Starlett's most recent evaluation who stated the rules violation demonstrated a lingering impulsivity.  Cal. Code Regs. tit. 15, § 2402(c)(6).

Petitioner's most recent psychological report does not favor release.  Dr. Starlett authored the most recent report on August 12, 2008 and opined that Petitioner's most recent 115 disciplinary action suggests that Petitioner has some lingering impulsivity.  Dr. Starlett opined that Petitioner's overall propensity for violence is in the low to low moderate range when compared to similar inmates.  Petitioner's general recidivism risk is rated in the medium range, and his level of psychopathy is in the low range.  Thus, the likelihood that Petitioner will violate parole appears in the medium range.  See e.g. Hayward, 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low to moderate" risk of future violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of parole.)  This was properly considered as some evidence that Petitioner remains an unreasonable risk to public safety if released.

After considering the factors in support of suitability, the Board concluded that the positive factors did not outweigh the factors in support of unsuitability, and the superior court's determination that the circumstances of the commitment offense, prior criminal history, unfavorable psychological evaluation, and most recent serious rules violation, demonstrate Petitioner continues to remain an unreasonable risk to public safety is not an unreasonable

application of the some evidence standard, nor an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

///

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   October 19, 2010**               /s/ Sandra M. Snyder
                                         UNITED STATES MAGISTRATE JUDGE